UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS GRIEB,

      Plaintiff,

  v.

Case No. 2:24-cv-265-KCD-NPM

KEVIN RAMBOSK, IN HIS
OFFICIAL CAPACITY AS
SHERIFF OF COLLIER COUNTY,
SEAN SWEENEY, IN HIS
INDIVIDUAL CAPACITY,
TATIANA ORTEGA, IN HER
INDIVIDUAL CAPACITY;
MICHAEL GARCIA, IN HIS
INDIVIDUAL CAPACITY;
BRYANT MCDUFFIE, IN HIS
INDIVIDUAL CAPACITY; and
JOSHUA ROBINSON, IN HIS
INDIVIDUAL CAPACITY,

      Defendant,

                         /

## **ORDER**

Plaintiff Thomas Grieb remembers nothing of his booking at the Collier County Jail. But surveillance cameras recorded the entire incident. What began as a standard processing for a drunk driving arrest devolved into a brawl when Grieb jerked his arm away from a deputy. In the thirty seconds that followed, Grieb was taken to the ground and struck multiple times by

three deputies before being handcuffed. The encounter left Grieb with significant injuries, including a fractured orbital bone.

Grieb now sues under 42 U.S.C. § 1983, alleging the deputies used excessive force and failed to intervene. He also claims Sheriff Kevin Rambosk is liable for the resulting damages. (Doc. 22.)[1] The injuries here are unsettling, and the question of excessive force is a close call. But under the doctrine of qualified immunity, a plaintiff must surmount a high bar: he must demonstrate that the officers violated a statutory or constitutional right that was "clearly established" at the time of the conduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because Grieb was actively resisting during the use of force, and because no precedent clearly prohibits the specific force used in that context, the deputies are entitled to immunity. As for Sheriff Rambosk, he cannot be held responsible for this encounter because Grieb offers no evidence that the deputies' actions stemmed from any department-wide policy or custom.

## I. Background

Because Grieb remembers nothing of the incident that led to this lawsuit, the story of what happened at the Collier County jail comes entirely from surveillance video and the deputies' unrebutted testimony.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Grieb was taken to Collier County jail after his arrest for drunk driving. (Doc. 69 ¶¶ 13, 16; Doc. 93 ¶¶ 13, 16.) While being booked, Grieb jerked his arm away from Deputy Sean Sweeney's grasp. In the same motion, he cocked back his elbow:



Sweeney responded by attempting to place Grieb in a headlock. But Grieb seemingly twisted his body, and the two men tumbled to the floor:



From there, the encounter escalated. Grieb landed backward and grabbed hold of Sweeney's tactical vest:



Sweeney began striking Grieb in the face, while Deputies Tatiana Ortega and Michael Garcia stepped in to help. Ortega struck Grieb's torso three times while struggling to pry his hand out for cuffing. Garcia, for his part, punched Grieb's legs twice while pinning them down. Three other deputies—Matthew Parker, Bryant McDuffie, and Joshua Robinson—stood nearby and watched the struggle unfold.

Roughly thirty seconds passed before Grieb was handcuffed and all force ended. Sweeney, Ortega, and Garcia insist their actions were a response to Grieb ignoring repeated commands to let go of Sweeney's vest and produce his hands. (Doc. 69-5 ¶¶ 9, 13; Doc. 69-8 at 39, 43-44; Doc. 69-9 at 58.) Grieb does not dispute this and admits he remembers nothing from the incident. (Doc. 69-1 at 44.)

Grieb ultimately suffered a "fractured orbital bone resulting in multiple surgeries, vision loss, a broken nose, extensive dental damage, and a traumatic brain injury." (Doc. 79 ¶ 6.) He now sues the deputies under 42 U.S.C. § 1983 for excessive force and failure to intervene. (Doc. 22 at Counts II, III, IV, VII, VIII, IX.) He also seeks relief against Sheriff Rambosk under § 1983 and state law. (*Id.* at Counts I, V, VI.) Defendants all move for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Smothers v. Childers*, 159 F.4th 922, 930 (11th Cir. 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). A genuine issue exists if a reasonable jury could return a verdict for the nonmoving party. *See, e.g.*, *Martinez v. GEICO Cas. Ins. Co.*, 152 F.4th 1323, 1330 (11th Cir. 2025). "And a fact is material if it might affect the outcome of the suit under the governing law[.]" *Gervin v. Florence*, 139 F.4th 1236, 1245 (11th Cir. 2025).

The moving party "bears the initial burden to demonstrate the basis for its motion, and must identify portions of the record which it believes demonstrates the absence of a genuine issue of material fact." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018). "The burden then shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). In reviewing the

evidence, the court draws all reasonable inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

## III. Discussion

Whether excessive force was used here is a close call. Grieb's active resistance—pulling his arm away and failing to produce his hands—allowed the deputies to use force. *See, e.g.*, *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1303 (11th Cir. 2023). But his ensuing injuries are unsettling. In the end, however, the deputies are entitled to qualified immunity. The Court further concludes that Grieb's § 1983 claim against Sheriff Rambosk fails, and it declines to exercise supplemental jurisdiction over his state-law claims. Because the deputies and Sheriff Rambosk have moved for summary judgment separately, the Court takes up each motion in turn.

### a. The Deputies' Motion for Summary Judgment

"Section 1983 creates a cause of action against any person who deprives someone of their federally protected rights under color of state law." *King v. Marceno*, No. 2:24-CV-375-KCD-DNF, 2025 WL 3080544, at *4 (M.D. Fla. Nov. 4, 2025). The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. This clause "has been construed to forbid the use of excessive force against pretrial detainees." *Ireland v. Prummell*, 53 F.4th 1274, 1296 (11th Cir. 2022); *see also Piazza v.*

*Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir. 2019). So jailers who use, or fail to intervene in the use of, excessive force may face liability under § 1983. *See Ireland*, 53 F.4th at 1301 ("[A] claim for failure to intervene requires an act of excessive force by the perpetrating officer in the first instance[.]"); *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021).

Still, "[q]ualified immunity shields officials from [§ 1983] liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crocker*, 995 F.3d at 1239. We apply this doctrine individually, conducting an independent analysis of each officer's actions and omissions. *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). To trigger this protection, an official bears the initial burden of showing that he was acting within his discretionary authority. *See, e.g.*, *Settle v. Collier*, 160 F.4th 1282, 1288 (11th Cir. 2025).

Grieb concedes that the deputies have met this threshold requirement. So the burden shifts to him to show why qualified immunity does not apply. *See, e.g.*, *Watkins v. Davis*, 156 F.4th 1084, 1097 (11th Cir. 2025); *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). To do so, Grieb must demonstrate that the constitutional right the deputies violated was "clearly established." *See Crocker*, 995 F.3d at 1240; *Ireland*, 53 F.4th at 1297. He can satisfy that standard in one of three ways: "(1) [he] can identify a qualifying case with indistinguishable facts, (2) [he] can rely on a broad

statement of principle within the Constitution, statute, or case law, or (3) [he] can show that the Officers' behavior was so egregious that it was obvious a constitutional right was clearly violated, even in the total absence of case law." *Watkins v. Davis*, 156 F.4th 1084, 1097-98 (11th Cir. 2025).

Grieb does none of that. Let us start with Deputy Sweeney. As mentioned, he repeatedly punched Grieb's face during the struggle. Grieb does not cite any caselaw holding that this degree of force on a resisting detainee is unconstitutional. Nor does he argue that the force was so obviously unlawful. He instead leans on a few broad principles.

First, he notes that a single strike can constitute excessive force and that "all force must cease if compliance is granted." (Doc. 79 at 17.) True. But these concepts are tied to situations involving non-resistant or otherwise subdued individuals. *See Quinette v. Reed*, 805 F. App'x 696, 705 (11th Cir. 2020) ("[A]t the time the officer punched him, he was subdued, compliant, and non-resistant."); *Piazza*, 923 F.3d at 954 (concluding second taser shock was excessive where detainee had become immobilized); *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) ("[W]e can discern no reason, let alone any legitimate law enforcement need, for Officer Ferraro to have led Lee to the back of her car and slammed her head against the trunk after she was arrested and secured in handcuffs."); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) ("[Plaintiff's] evidence suggests the officers used excessive

9

force in beating Slicker even though he was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way.").

Sweeney, on the other hand, only punched Grieb while he was actively resisting by either pulling away or refusing to produce his hands. So the principles Grieb cites do not quite fit. *See H.M. v. Castoro*, No. 23-10762, 2024 WL 4799480, at *4 (11th Cir. Nov. 15, 2024); *McCroden v. Cnty. of Volusia*, 724 F. App'x 768, 770 (11th Cir. 2018) (finding broad principle "that gratuitous use of force against" a non-resisting individual is excessive was inapplicable where video showed plaintiff resisting); *Ratlieff v. City of Fort Lauderdale*, 748 F. Supp. 3d 1202, 1259 (S.D. Fla. 2024) (rejecting plaintiff's reliance on broad principle involving materially different facts).

Grieb further highlights that officers cannot use force wholly unnecessary to any legitimate law enforcement purpose. But "legitimate interests—including the need to preserve internal order and discipline and maintain institutional security—may at times require jail officers to use force." *Piazza*, 923 F.3d at 953; *see also Baker v. Clements*, 760 F. App'x 954, 957 (11th Cir. 2019); *Crandle v. Sims*, No. CA 16-0550-MU, 2020 WL 5239824, at *3 (S.D. Ala. Sept. 2, 2020). So this principle does not govern here either. No matter how you slice it, Grieb has not shown how Sweeney violated clearly established law. Sweeney is thus entitled to qualified immunity.

10

Ditto for Deputies Ortega and Garcia. Ortega, as you will remember, punched Grieb's torso as she struggled to secure his arms. And Garcia pinned down Grieb's legs. Both deputies acted as Grieb actively resisted by refusing to produce his hands. No broad principles or precedent Grieb cites applies to these facts. Nor does he suggest Ortega's force was so obviously unconstitutional. So Ortega and Garcia are likewise entitled to qualified immunity. *See Carruth v. Bentley*, 942 F.3d 1047, 1061 (11th Cir. 2019); *Deppe v. Sovinski*, No. 6:23-CV-1484-JSS-UAM, 2025 WL 523448, at *7 (M.D. Fla. Feb. 18, 2025).

That leaves us with Deputies Parker, McDuffie, and Robinson. Grieb contends they each failed to intervene while witnessing excessive force. But since Grieb has not shown that the acting deputies violated clearly established law, these failure-to-intervene claims necessarily fail too. *See Callwood v. Jones*, 727 F. App'x 552, 560 (11th Cir. 2018) ("Because the law does not clearly establish that Smith used excessive force, the other officers had no duty to intervene."); *Nelson v. Lott*, 330 F. Supp. 3d 1314, 1339–40 (N.D. Ala. 2018) ("[W]hen binding caselaw has not clearly established that a police officer's action was an unlawful use of excessive force, no other officer present at the scene has a duty to intervene."); *Barton v. Norrod*, 106 F.3d 1289, 1299 (6th Cir. 1997) (concluding that an observing officer was entitled to qualified immunity because "there was no clearly established right being

11

violated for which [he] had a duty to intervene and protect"). Each deputy is thus entitled to qualified immunity.

### b. Sheriff Rambosk's Motion for Summary Judgment

Sheriff Rambosk's motion is also addressed in two parts: the § 1983 claim and the state-law claims.

### i. § 1983

The federal claim against Sheriff Rambosk is, in substance, a claim against the governmental entity he represents—the Collier County Sheriff's Office. Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), municipal entities are "persons" within the scope of § 1983. They can be held liable for civil rights violations when plaintiffs show "(1) that their constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Bridges v. Poe*, 155 F.4th 1302, 1318 (11th Cir. 2025).

Grieb's *Monell* claim rests on two distinct theories. First, he maintains that Sheriff Rambosk's inadequate training or supervision of his deputies "amounted to . . . deliberate indifference" of detainee rights. (Doc. 22 ¶ 37.) Sheriff Rambosk offers evidence that his deputies were properly trained. (Doc. 70-12 at 62.) Grieb does not contest these facts and has apparently abandoned this claim. (Doc. 78; Doc. 94 ¶ 56.) "There is no other way to read

12

this response but as conceding [Sheriff Rambosk's] argument[.]" *Dash v. United States*, No. 22-80015-CV, 2023 WL 3318968, at *3 (S.D. Fla. Jan. 9, 2023). So summary judgment is proper on this theory.[2]

Second, Grieb alleges that a custom of using excessive force existed. "[A] plaintiff may establish a policy or custom exists by showing a persistent and wide-spread practice and the government's actual or constructive knowledge of that practice." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1131 (11th Cir. 2021). Grieb's evidence falls far short of this bar.

While he trots out two previous incidents of excessive force at the Collier County jail, "two incidents . . . are insufficient to establish a custom." *Wakefield v. City of Pembroke Pines*, 269 F. App'x 936, 940 (11th Cir. 2008); *see also Sheets v. Prummell*, No. 2:24-CV-943-SPC-NPM, 2025 WL 1425460, at *2 (M.D. Fla. May 16, 2025). What is more, both incidents occurred in 2007—roughly fifteen years before Grieb's arrest—making them too remote to support his claim. *Khoury*, 4 F.4th at 1132; *Riegel v. Sch. Bd. of Lee Cnty., Fla.*, No. 2:23-CV-1133-JES-KCD, 2025 WL 1992798, at *5 (M.D. Fla. July 17, 2025) ("Evidence of . . . conduct too remote in time . . . will fall short [of proving Monell liability.]"); *Guzman v. City of Hialeah*, No. 15-CV-23985,

---

[2] Even without the concession, Grieb has failed to marshal the facts needed for a failure-to-train claim. "For purposes of a failure to train theory, a plaintiff must ordinarily demonstrate a pattern of similar constitutional violations by untrained employees." *Guarda v. City of Melbourne, Fla.*, No. 617CV756ORL37TBS, 2017 WL 3034071, at *2 (M.D. Fla. July 18, 2017). As explained below, there is no such evidence here.

2017 WL 4324632, at *1 (S.D. Fla. Sept. 29, 2017). And lastly, both incidents led to the termination of these officers. This suggests that excessive force was shunned, not sanctioned. *See Jackson v. Montesino*, No. 08-80554-CIV, 2009 WL 1515511, at *6 (S.D. Fla. June 1, 2009) ("[P]laintiff . . . adduces nothing at all to indicate that any policy-setting official within the Department tolerated or approved of, much less encouraged, [excessive force]. To the contrary, Sheriff Bradshaw adduces evidence showing that officers who do stray from the official protocol on use of force are disciplined, including termination where appropriate.").

Grieb also emphasizes that Sweeney struck other detainees, and he could not remember how many times he had done so. But this admission is not necessarily "evidence that these uses of force were excessive." *Tompkins-Holmes v. Gualtieri*, No. 8:17-CV-52-T-33AEP, 2018 WL 4568868, at *10 (M.D. Fla. Mar. 16, 2018). "Without more information or context, the court cannot infer a custom condoning excessive force." *White v. City of Birmingham, Ala.*, 96 F. Supp. 3d 1260, 1284 (N.D. Ala. 2015).

Finally, Grieb notes that other deputies mockingly equated Sweeney's name with using excessive force, which Sweeney leaned into. (Doc. 78 at 9.) The Sheriff's Office hardly tolerated this though. An internal affairs investigation deemed Sweeny's conduct unprofessional. And Sweeney consequently had to meet with the Professional Responsibility Bureau. This

14

evidence undercuts the notion that excessive force "was so widespread as to have acquired the force of law." *See Ludaway v. City of Jacksonville, Fla.*, 245 F. App'x 949, 951-52 (11th Cir. 2007). In any event, Grieb has failed to offer evidence that Sweeney's prior conduct (to the extent it occurred) amounted to excessive force. *See Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) ("The Plaintiff must present at least some evidence from which a reasonable jury could infer that the complaints were meritorious."); *Poulin v. Bush*, 650 F. Supp. 3d 1280, 1304 (M.D. Fla. 2023) ("Where a plaintiff relies on a pattern of complaints of unconstitutional conduct to show a custom, the complaints must have merit. The complaints must also concern factual situations that are substantially similar to the case at hand.").

At bottom, Grieb offers insufficient evidence to establish a custom or policy of using excessive force. His *Monell* claim against Sheriff Rambosk thus fails as a matter of law.

### ii. The State-law claims

With the constitutional issues gone, only Grieb's state-law claims remain. "While no party addresses whether the Court should continue to exercise supplemental jurisdiction," the issue can be raised sua sponte. *See Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202, 1217 (M.D. Fla. 2021).

District courts may exercise supplemental jurisdiction over state-law claims when they "arise out of a common nucleus of operative fact with a

15

substantial federal claim." *Silas v. Sheriff of Broward Cnty., Fla.*, 55 F.4th 863, 865 (11th Cir. 2022); *see also* 28 U.S.C. § 1367(a). But after the federal claims are gone, the "court ha[s] the discretion either to continue to exercise supplemental jurisdiction" or not. *Silas*, 55 F.4th at 865. District courts are generally "encouraged . . . to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004); *see also Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999).

The Court declines to exercise supplemental jurisdiction over Grieb's remaining state-law claims since they "raise[] novel or complex issue[s] of State law." 28 U.S.C § 1367(c). "State courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997); *see also Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 540 (11th Cir. 2015) ("Federal courts are (and should be) loath to wade into unchartered waters of state law, and should only do so when absolutely necessary to the disposition of a case.").

To be sure, the parties have already engaged in discovery, and judicial economy often weighs against starting over. But dismissal here does not mean returning to square one. The work the parties have done is not a sunk cost. They can walk their depositions and document production across the street to state court and pick up exactly where they left off. Thus, judicial

16

economy does not demand that this Court cling to a dispute that has lost its federal reason for being here. The remaining claims are a matter of Florida law between Florida parties. Comity dictates that Florida judges should have the final say on it.

## IV. Conclusion

In sum, Grieb fails to show why the deputies are not entitled to qualified immunity. And he offers no evidence showing a custom or policy of approving excessive force. The deputies' motion for summary judgment (Doc. 69) is therefore **GRANTED**. Sheriff Rambosk's motion (Doc. 70) is also **GRANTED IN PART AND DENIED IN PART**, with counts V and VI **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions, and close the case.

**ORDERED** in Fort Myers, Florida on January 29, 2026.


Kyle C. Dudek
United States District Judge